**DeArmond RASMUSSEN and Afton B. Rasmussen, his wife, Plaintiffs and Appellants,**

v.

**Douglas A. OLSEN and Dorothy Olsen, his wife, Defendants and Respondents.**

No. 15249.

Supreme Court of Utah.

July 18, 1978.

Arthur H. Nielsen and Clark R. Nielsen of Nielsen, Henriod, Gottfredson & Peck, Salt Lake City, Udell R. Jensen, Nephi, for plaintiffs and appellants.

A. Dean Jeffs of Jeffs & Jeffs, Provo, for defendants and respondents.

ELLETT, Chief Justice:

The Rasmussens, as sellers of a farm, sued Douglas Olsen, the purchaser, seeking to quiet title in themselves to the mineral rights in and to the farm, and to restore the deed given which had been altered by Mr. Olsen and then recorded. Mr. Olsen counterclaimed and requested the court to grant him the mineral rights to the farm.

On September 26, 1958, the parties signed a Uniform Real Estate Contract which provided for the sale of the farm "accurately described in deeds, or deed, which together with abstracts, water stock certificate, and all other papers appurtant [sic] to this transaction, shall be placed in the Sanpete Valley Bank on escrow . . .."

No mention is made in the contract regarding mineral rights, whether to be retained or sold. The price was $31,500, $16,-500 of which was paid in cash and the balance of $15,000 to be paid on or before April 1, 1959. On the same day of the contract a deed was given by the Rasmussens to the Olsens containing this last paragraph:

EXCEPTING AND RESERVING unto the Grantors, their heirs and assigns forever, all oil, gas, petroleum, naphtha, other hydrocarbon substances and minerals of what-so-ever kind and nature in, upon or beneath the property hereinabove described, together with the right of entry and all other rights, including all rights of way and easements, which may be necessary or convenient for the development, production and removal, and storage, of all such substances and minerals, and the full enjoyment of the Grantors' interest in said lands hereby reserved.

There is conflicting testimony by the parties as to whether Douglas Olsen read the deed or knew about the reservation of mineral rights included therein. At any rate there is no question raised about the fact that he and his mother, the Rasmussens, the lawyer who prepared the deed, the real estate salesman, and an officer of the bank were all present when the deed was signed and that the reservation was in the deed at that time. The deed was given in escrow to the bank which held it until April 1, 1959, when it was delivered to Olsen.

Mr. Olsen altered the deed by obliterating the paragraph set out above reserving the mineral rights and on July 26, 1962, he recorded the altered deed. The Rasmussens had no actual notice of the alteration of the deed until late 1970 or early 1971 when the agent of an oil leasing company informed him thereof. The complaint in this matter was filed in the district court on September 7, 1971.

There were two trials in the matter. In the first trial held in July, 1974, the trial judge held for the Rasmussens. Mr. Olsen moved for a new trial and before the judge could rule on the motion, he became so ill that his doctor forbade any further court work. The presiding judge considered the record of that trial and granted a new trial. The second trial began in August, 1976, and the judge there held for Mr. Olsen.

In order to reform a deed given, the trier of the fact must be convinced by clear and convincing evidence that there was a mutual mistake of fact or that there was fraud practiced upon the innocent party.[1]

1. *Mawhinney v. Jensen,* 120 Utah 142, 150, 232 P.2d 769 (1951).

■ In an equity case this Court may examine the facts and make its own findings when the findings made by the trial court appear not to be sustained by the evidence.[2] Numerically the witnesses for the Rasmussens predominated. The court was not obligated to find according to the number of witnesses testifying for or against a given proposition; but when a deed is given and one party claims he did not look at it, his testimony does not impress us as being clear and convincing. This is particularly true when we consider that the first trial judge, on practically identical evidence as was given at the second trial, found for the Rasmussens.

■ There are other reasons why Mr. Olsen cannot prevail in this suit. The trial judge correctly held that the statute of limitations prevented his recovery of damages for any breach of contract. Even if we assume that the reservation in the deed was not in accordance with the terms of the Uniform Real Estate Contract, there was nothing more than a breach thereof and that breach would have afforded a cause of action not later than April 1, 1959, when Mr. Olsen received the deed. He never has requested a reformation of that deed. He merely counterclaimed for damages, and prayed that the title to the property be quieted in him and his present wife.[3]

The statute of limitation for breach of a written contract is six years;[4] the statute of limitation for fraud or mistake is three years after discovery of the facts that constitute the fraud or mistake.[5] Even if Mr. Olsen had sued to reform the deed to conform to the Uniform Real Estate Contract, he would have had to do so within a reasonable time or he would have been met with the defense of laches. In this case he sat by, reaping the fruits of his forgery by alteration of the deed for twelve long years.

In the case of *McConkie v. Hartman*[6] our Court said:

The court below found that the plaintiffs had full opportunity to discover the reservations in the deeds when the deeds were delivered to Security Title Company and when they reviewed problems in the chain of title. That all of the circumstances existing at or about the time the deeds were recorded were such as to furnish full opportunity to the plaintiffs for the discovery of the mistake or fraud, if any existed. The court further found that more than eight years had elapsed since the time for reasonable inquiry on the part of the plaintiffs would have revealed the mistake or fraud to the time of filing their complaint. The trial court concluded that the claims of the plaintiffs are barred by the statutes of limitation above referred to.

The judgment of the court below is affirmed. No costs awarded.

It was in 1970 when Mr. Olsen attempted to lease the mineral rights and that was when the Rasmussens first learned of the forgery by alteration.

Mr. Olsen apparently knew that he could not reform the deed because in order to do so, it would be necessary to prove by clear and convincing evidence that the minds of both parties had been in agreement on a term which they had mutually agreed would not be placed in the deed.[7] Instead, he chose to alter the deed and now claims that since he recorded the deed as altered, the recordation thereof gave notice to all the world that he claimed the mineral rights to the land, and, therefore, the Rasmussens can do nothing because of the statute of limitations.

■ The recording of a forged deed gives no notice to the world or to anybody within

2. Constitution of Utah, Art. VIII, Sec. 9; *Peterson v. Peterson,* 112 Utah 554, 190 P.2d 135 (1948).

3. Mr. Olsen was a single man at the time of the purchase.

4. U.C.A., 1953, 78–12–23(2).

5. U.C.A., 1953, 78–12–26(3).

6. Utah, 529 P.2d 801 (1974).

7. *Ingram v. Forrer,* Utah, 563 P.2d 181 (1977). This was a case where the seller tried to reform a deed to include a reservation of mineral rights. He was not permitted to do so.

it of the contents thereof. Such a deed is void and even if a bona-fide purchaser from the person who altered it takes nothing by it.[8]

Ordinarily when a deed is given in full execution of a contract of sale of land, all provisions of the prior contract are merged therein; and when the merger is denied by a party, the burden is upon him to show to the contrary by clear and convincing evidence.[9]

The alteration of the deed gave Mr. Olsen nothing. The mineral rights were retained by the Rasmussens and the only effect of the alteration was to cloud the title of the Rasmussens to their mineral rights.

The evidence is not clear and convincing that the Rasmussens committed any fraud upon Mr. Olsen in reserving the mineral rights. There was no claim made that the deed as given should be reformed and even if a request to have it reformed had been made in the counterclaim, it would have come too late. The deed as given is in full force and effect.

The judgment is reversed and the case is remanded with directions to order the defendants to correct the recordation of the deed to show the mineral rights to be in the plaintiffs. No claim is made in the briefs filed in this matter regarding the disposition of funds received by the Olsens from the leasing of the mineral rights. The record seems to indicate some sort of a stipulation regarding that matter which the parties will undoubtedly honor.

Costs are awarded to the Rasmussens.

CROCKETT and HALL, JJ., concur.

WILKINS, J., concurs in result.

MAUGHAN, J., dissents.

---

8. 4 Am.Jur.2d Alteration of Instruments, Sec. 27; *Mosley v. Magnolia Petroleum Co.,* 45 N.M. 230, 114 P.2d 740, 750 (1941).

---

9. 26 C.J.S. Deeds § 91 c; *Duncan v. McAdams,* 222 Ark. 143, 257 S.W.2d 568 (1953); 38 A.L. R.2d 1307. See cases annotated in 38 A.L.R.2d 1315.