MR. JUSTICE SHEEHY,
dissenting:
The Court should first identify the true nature of the instrument that is before us in this case. We are not dealing with a void deed; we are instead dealing with an alleged “altered instrument.” There are sharp differences in legal consequences which result from an al *206 tered instrument, especially as concerns the nonconsenting party. It was explained in Smith v. Barnes (1915), 51 Mont. 202, 211, 212; 149 P.963:
“. . . Technically speaking, an ‘alteration’ occurs when a written contract is intentionally changed in material respect after execution, by or at the insistence of one of the parties, and without the consent of the other . . . The legal effect of an alteration is to extinguish all the executory obligations of the contract in favor of the parties responsible as against the parties who do not consent (Revised Codes Section 5069); and the appellant, if the change was an alteration procured by him, could not maintain this action, nor maintain any action, upon the contract, either in its original or its altered form (citing authority). But the nonconsenting party loses no right. He is not obliged to rescind or repudiate the contract as it actually was made. He may ignore the change, because it does not express his contract, and hold the other party to the contract according to its original terms (citing authority); and this, a right peculiar to the nonconsenting party in the case of an alteration, is the final effect of a spoliation as to both parties. The contract stands as originally made, without regard to the change (citing authority). So that, whether the change in question was an alteration or a spoliation, the right of Barnes to do what he seeks to do, and what the allegations of fraudulent procurement were clearly intended to entitle him to do, cannot be assailed.
“It is insisted in this connection, however, that Barnes cannot stand upon the contract as it was actually made, because of ratification or waiver. This ratification or waiver is claimed because of his retention of the first payment after knowledge of the change, and ‘because of his failure to examine his own copy or that of the bank, or to do anything to avoid the contract until May, 1911’. There is no room for this contention in the pleadings. Ratification and waiver are in the nature of estoppel, and to be available, they must be pleaded when an opportunity to make such plea is presented, (citing authority.) Not only is there no such plea, but in point of fact there could be none, because the issues were made upon the character of the contract as executed. But this claim of ratification or waiver also betrays a misconception of Barnes’ position. If, as we have held, he could ignore the change and stand upon the contract as made, he was certainly not required to avoid it. It was his right to retain the first payment, to permit the appellant to perform the contract, and to forfeit the payment, if the appellant failed. Unless Barnes re *207 ceived something from the appellant under the contract as changed, with knowledge of the change, his rejection, through the bank, of appellant’s tenders gave notice of his refusal to abide the change. As he was not required to avoid the true contract, and as he could ignore the change until something occurred to compel him to accept or reject it, he could not be estopped by any action or inaction which amounted to anything less than an acceptance of the change.” (Emphasis added.)
The law is, or was until this case, in case of an altered instrument, where the change was made without the consent of the other party, the nonconsenting party was not required to take any action, and thus there could be no charge against him, until he accepted the change, relating to laches, estoppel, waiver, or any like defense. In this case therefore the discussion of laches, or the effect of recording, under the facts adduced in this case, is irrelevant. Here Benson acted when he learned that the other party and his successors were relying on the altered portion of the instrument.
We should reverse this case on the fact issue that is presented. The District Court granted a summary judgment. The fact issue to be determined in this case is whether we do have before us an altered instrument. In that regard, we are presented with the evidence of McCullough, who is named as a grantee in the altered deed, and who now claims in oral testimony that he was not a party to the deed, and had no knowledge that he was a grantee under the deed. Militating against his oral testimony now is an earlier deed that he made, with others, granting to Diehl Company this and other properties, but without a mineral reservation. This case requires a trier of fact to determine whether there is actually before us an altered instrument. If it does turn out that the instrument has been altered, the legal ramifications clearly follow. Laches and statutes of limitations and recording statutes have no application until the mining on the property has begun.
The reliance of the majority upon Section 70-20-404, MCA, to protect Kaiser as an innocent purchaser for value is ill-founded. Section 70-20-404, MCA, applies only to fraudulent transfers made by grantors with fraudulent intent to defraud prior or subsequent purchases or encumbrancers. This instrument is not a fraudulent conveyance. It is an altered instrument, if it was altered, and it was altered by the grantee. This Court would do well not to mess up our property law by applying statutes that have no application.
The rule is that in the case of altered instruments, a deed fraudu *208 lently altered becomes void and a bona fide purchaser from the person altering it takes nothing by it. Mosely v. Magnolia Petroleum Co. (1941), 45 N.M. 230, 114 P.2d 740; 4 Am.Jur.2d.2c., Section 27, Alteration of Instruments. The purchaser protects himself by exacting from his qrantor the necessary covenants. The only effect of the alteration of the mineral reservation was to cloud Benson’s title; the recording of an altered deed gives no notice to anyone because the altered portion of the deed is void and even a bona fide purchaser takes nothing by the alteration. Rasmussen v. Olsen (Utah 1978), 583 P.2d 50. The doctrine of bona fide purchaser applies only to purchasers of legal title to the mineral interest. Thomas v. Roth (Wyo. 1963), 386 P.2d 926.
MR. JUSTICE HUNT, concurs with the foregoing dissent.